Order accordingly.

---

THE PEOPLE on rel. LIVERMORE a. HAMILTON.

*Supreme Court, First District; General Term, February,* 1863.

LANDLORD AND TENANT.—SUMMARY PROCEEDINGS.—PEREMPTORY CHALLENGE TO JUROR.—AWARD OF RESTITUTION.

Under the Laws of 1849, 292, ch. 193, § 4,—which provides that in summary proceedings by a landlord to recover land, six jurors shall be drawn, in like manner as jurors in justices' courts,—no right to a peremptory challenge to any of such jurors exists.

On the reversal of a judgment in favor of the landlord, in summary proceedings to recover possession of land, restitution will not be awarded where such reversal is on the ground of irregularities, and it appears that the landlord should again prevail in regularly conducted proceedings.

Certiorari to review a landlord and tenant proceeding.

The relators were Charles F. Livermore, Henry Clews, Henry W. Mason, and Theodore Fowler; the respondent, Alexander Hamilton, Jr.

The People *on rel.* Livermore *a.* Hamilton.

In May, 1862, Hamilton, as landlord, commenced summary proceedings against the relators, to recover possession of an office on the first floor of Jauncey Court, in the city of New York, on the ground, as stated in the affidavit on which the summons was issued, that he had leased the office to the relators for the term of one year, commencing May 1st, 1861, and ending May 1st, 1862, and that they held over and continued in possession of the premises after the expiration of their term, without his permission. . The tenants, upon the return-day, appeared, and filed a counter-affidavit, denying that the term expired on the 1st of May, 1862, and alleging that the lease contained a clause giving the tenants the privilege of taking the premises for two years after that date, on giving notice of their intention on or before the 1st day of February, 1862, which notice they had duly given, and thereby became entitled to occupy the premises until the 1st of May, 1864. The issue thus raised was tried before the justice and a jury.

The jury which tried this issue was composed in the following manner: Twelve jurors were summoned, who had been previously nominated by the justice. Out of these twelve, six were drawn, impanelled, and sworn. After this, one of these six jurors was challenged peremptorily, by the landlord, without any cause assigned or shown, and was set aside by the justice, who overruled the tenants' objection, that in these proceedings the law does not give a peremptory challenge. Another juror was thereupon drawn by the justice, in place of the juror challenged, from the twelve summoned, and he, with the five previously drawn, heard the testimony, and rendered a verdict for the landlord. The lease, which was put in evidence by the landlord, contained a clause giving the tenants " the privilege of taking said office for two years longer on the same terms and conditions as herein contained, on giving notice of such intention to said landlord on or before the 1st day of February, 1862. Two witnesses called by the tenants, viz., Clews and Fowler, gave evidence that on the first day of August, 1861, Clews had given an explicit verbal notice to an agent of the landlord of the decision of the tenants to retain the office for two years longer, in accordance with the privilege contained in the lease. That the agent, at the time the notice was given, was in the office, acting for the landlord, and endeavoring to

induce the tenants to pay part of a bill for repairs to the offices. The payment for these repairs was a matter in dispute between the landlord and the tenants. At this interview, on the 1st of August, an arrangement was entered into between Clews, and the agent acting for Hamilton, by which this bill was to be divided equally between the landlord and the tenants. The notice of the intention to retain the offices was given in connection with, and formed part of, this arrangement.

The agent testified to the interview with Clews, on the 1st of August, and the arrangement entered into with respect to the payment of the bill for repairs, but said he had "no recollection, whatever, of any thing having been said in that interview of an intention to retain the offices for two years. The arrangement, with respect to the repairs, was agreed to by the landlord. Two witnesses were called by the landlord, who testified that Clews had stated to them that "he had not given Mr. Hamilton notice." The tenants then, for the purpose of explaining these contradictory statements, offered to show, by Clews, that at the time of making them, he supposed that a *written notice* of an intention to renew the lease was necessary; that he had been so advised by counsel and by business friends, and that this was the kind of notice he had referred to when he said that he had not given any notice.

The justice rejected this testimony. The tenants then, for the same purpose, offered the testimony of John P. Crosby, a counsellor-at-law, that he had advised Clews and his co-tenants that a written notice of their intention to renew the lease was necessary.

The justice rejected this testimony.

The jury gave a verdict in favor of the landlord, and he entered into possession of the premises accordingly. The tenants procured a certiorari.

*Henry A. Cram*, for the relators.—I. There is no right of peremptory challenge in the trial of the issues raised in summary proceedings under the Landlord and Tenant Act. The act directs the jury, which is to try the issues, to be formed and impanelled in a particular manner. (*Laws of* 1820, 176; 3 *Rev. Stat.*, 5 ed., 837, §§ 35, 36.) The manner in which jurors are drawn in justices' courts is prescribed. (3 *Rev. Stat.*, 5

ed., 441, §§ 90, 91.) The challenge referred to in § 91, is a challenge for cause. No peremptory challenge is allowed. Challenges are either peremptory or for cause. Peremptory challenges are those which are made without assigning any reason, and which the court must allow. (1 *Bouv. Law Dict.*, tit. *Challenge; Cow. Tr.*, § 1290.) At common law, and by the laws of this State prior to the act of 1847, peremptory challenges were exclusively confined to criminal cases, and had no existence in civil actions, or in any proceedings whatsoever not of a criminal nature; and only to those criminal cases which were of a capital nature. (*Coke on Lit.*, 156, b.; 3 *Bl. Com.*, 349; *Bacon's Abr.*, tit. *Juries*, subd. 9; 2 *State Trials*, 254; 4 *Hawk. Pleas of the Crown*, 389; 2 *Hale's Historia Prac. Cor.*, 267, 268; Reading's Trial, 7 *State Trials*, 264; Oates' Trial, 10 *Ib.*, 1080; Freeman *a.* People, 4 *Den.*, 9.) Extended, in this State, to offences punishable with imprisonment in a state-prison for ten years or a longer time. (3 *Rev. Stat.*, 5 ed., 1027, § 9.) By the act of 1847, extended further to all other criminal cases, and to "the trial of issues of fact joined in civil actions." (*Laws of* 1847, 130, ch. 134, § 2.) But it is not thereby extended to the issue joined between landlord and tenant in summary proceedings, because those statutes extending this right are in derogation of the common law, and must be strictly construed. (Freeman *a.* People, 4 *Den.*, 9; Farrington *a.* Morgan, 20 *Wend.*, 207.) The summary proceeding to dispossess a tenant is not a civil action. (*Code*, §§ 1–3; *Ib.*, § 127; Hyatt *a.* Seeley, 11 *N. Y.*, 52; Belknap *a.* Waters, *Ib.*, 477.) These proceedings, however, are commenced by an affidavit which is presented to the justice, and on which he issues his summons; and there is no complaint, or other pleadings, in summary proceedings. The issue is joined on affidavits. "The statute does not contemplate pleadings." (Geisler *a.* Acosta, 9 *N. Y.*, 227.) This summary proceeding is, therefore, not a "civil action," within the meaning of the law, and it has been so held in several cases. (People *a.* Willis, 5 *Abbotts' Pr.*, 205; Romaine *a.* Kinshimer, 2 *Hilt.*, 519; Haviland *a.* White, 7 *How. Pr.*, 154; Williams *a.* Bigelow, 11 *Ib.*, 83.)

II. The impanelling not having been according to the statute, there was no jurisdiction to try the issue. (Rex *a.* The Commrs. of Sewers for Somerset, 7 *East*, 71; Farrington *a.* Morgan, 20

*Wend.*, 207; Anderson *a.* Prindle, 23 *Ib.*, 616; Benjamin *a.* Benjamin, 5 *N. Y.*, 383.)

III. The justice erred in excluding the testimony of Clews, that he had been advised by counsel, and believed that a written notice was the only adequate and proper notice to renew his lease, and that his statement, that no notice had been given, was made under the influence of that advice. (1 *Greenl. Ev.*, § 467; The Queen's Case, 2 *Brod. & Bing.*, 374.) And, on this ground, it is held that "the declarations of witnesses, whose testimony has been taken on commission, contradicting and invalidating their testimony, cannot be given in evidence." (Brown *a.* Kimball, 25 *Wend.*, 259; Van Ness *a.* Bush, 14 *Abbotts' Pr.*, 33.) And so when the witness has been examined *de bene esse.* (Stacy *a.* Graham, 14 *N. Y.*, 492.) For the same reason, the justice erred in rejecting the evidence of John P. Crosby.

IV. The justice erred in rejecting testimony to Clews' general character for truth and veracity. (People *a.* Vane, 12 *Wend.*, 78; People *a.* Rector, 19 *Ib.*, 569, 612; Rex *a.* Clarke, 2 *Stark.*, 241; Carter *a.* People, 2 *Hill*, 317; People *a.* Vane, 12 *Wend.*, 78; State *a.* Rowe, 12 *Verm.*, 111; Paine *a.* Tilden, 5 *Washb. (Vt.)*, 552, 554; Sweet *a.* Sherman, 6 *Ib.*, 23; Hadjo *a.* Gooden, 13 *Ala.*, 718; *Phillips & Amos Ev.*, 8 ed., 944; *Phillips Ev.*, 7 ed., 306; *Greenl. Ev.*, § 469.) A number of other cases hold that character is put in issue by evidence of contradictory statements, and admit evidence of consistent statements to sustain it. (Lutterell *a.* Reynell, 1 *Mod. Cas.*, 282; Learey's Case & Finney's Case, 1 *McNally's Ev.*, 178; Friend's Case, 4 *State Trials*, 613; Commonwealth *a.* Wilson, 1 *Gray (Mass.)*, 337; Lessee of Packer *a.* Gonsalus, 1 *Sergt. & Rawle (Penn.)*, 536; Wright *a.* Deklyne, 1 *Pet. C. C. R.*, 199; Jackson *a.* Etz, 5 *Cow.*, 314.) And where evidence of consistent statements has been deemed inadmissible, it has been so held, on the ground that such evidence is not calculated to restore character—not that character is not put in issue by evidence of contradictory statements. (People *a.* Vane, 12 *Wend.*, 78; Craig *a.* Craig, 5 *Rawle*, 91; Ware *a.* Ware, 8 *Greenl.*, 55.)

V. The justice erred in refusing to instruct the jury, that though they do not infer that Hamilton, the landlord, held

Rogers out as his general agent, nevertheless, if they believed Fowler and Clews' account of the arrangement of the 1st of August, with respect to the division of the bill for repairs, and that the notice of renewal made part of such an arrangement, Hamilton must be held to have acquiesced also in such notice, and to have incurred the same liability as if it had been given to himself personally. (Farmers' Loan & Trust Co. *a.* Walworth, 1 *N. Y.*, 433, 447; Hovey *a.* Blanchard, 13 *N. H.*, 145.)

VI. The verdict was against evidence.

*Jeremiah Larocque*, for the respondent.—I. The peremptory challenge of the juror, Frank C. Huntington, was properly allowed. (*Laws of* 1847, 130, ch. 134, § 1; 1849, 292, ch. 193, § 4.) When this act of 1849 was passed, it will be observed, the act of 1847, giving peremptory challenges in civil actions, was already in force, and clearly allowed such challenges in such actions, as well in justices' courts as in courts of record. The 4th section of the act of 1849, directing the drawing of the jury in summary proceedings, "in like manner as in justices' courts," conformed the proceedings for that purpose in all respects to those in civil actions in justices' courts, and clearly gave the peremptory challenges in such proceedings. The act allowing such challenges is highly remedial, and should be liberally construed.

II. The offer to prove the general character of Mr. Clews for "truth and integrity," was properly overruled. His general character had not been attempted to be impeached. His contradiction by former inconsistent statements did not entitle him to give such evidence. (Russell *a.* Coffin, 8 *Pick.*, 143, 154.) The offer to prove his character for "integrity" was not within the rule on the subject. (Gilbert *a.* Sheldon, 13 *Barb.*, 623, and cases cited; Jackson *a.* Lewis, 13 *Johns.*, 504; Commonwealth *a.* Moore, 3 *Pick.*, 194; People *a.* Mather, 4 *Wend.*, 229, 257, 258.)

By the Court.*—Sutherland, P. J.—It is plain, that the proceedings in this case should be reversed. The landlord had

* Present, Sutherland, P. J., Ingraham and Clerke, JJ.

no right peremptorily to challenge the juror, nor had the magistrate any power to set the juror aside on such challenge.

The controverted facts may be tried either by the magistrate or by a jury,—by a jury, provided either party to the proceeding, at the time designated in the summons for showing cause, demand a jury, and pay the costs of obtaining the jury. (3 *Rev. Stat.*, 5 ed., 837, § 34.) In this case, the relators, the tenants, demanded that the controverted facts be tried by a jury. The act of 1849 (292, ch. 193, § 3), amending the provisions of the Revised Statutes, provides for the nomination by the magistrate of twelve reputable persons, qualified to serve as jurors in courts of record, and for the summoning of such persons to appear before the magistrate. Section 4, of the same act, provides that "six of the persons so summoned shall be *drawn* in like manner as jurors in justices' courts, and shall be sworn," &c. By the Revised Statutes, before the act of 1849, the magistrate was to nominate *eighteen* reputable persons, qualified to serve as jurors, who were to be summoned, &c., and *twelve* of the persons so summoned were to "be balloted for, and *drawn*, in like manner as jurors in courts of record," &c. (2 *Ib.*, 514, §§ 35, 36.)

When the act of 1849 was passed, the manner in which jurors in justices' courts were to be drawn was prescribed by statute, as follows: " the names of the persons so returned (returned as having been summoned as jurors), and who shall appear, shall be respectively written on several and distinct pieces of paper, as nearly of one size as may be; and the constable, in the presence of the justice, shall roll up, or fold such pieces of paper, as nearly as may be, in the same manner, and put them together in a box, or some convenient thing. The justice shall then draw out six (or such number as the parties may agree upon) of such papers," &c. (2 *Rev. Stat.*, 243, §§ 99, 100.) It was further provided by the statute (§ 100), that "if any of the persons whose names shall be so drawn shall be challenged and set aside, then such further number shall be drawn as will make up the number required, after all legal causes of challenge allowed by the justice." The statute further declared (§ 100), that " the persons so drawn, appearing and approved as indifferent," should compose the jury to try the cause.

It is perfectly plain, that the manner or mode of drawing the

jurors, prescribed by the statute, is a distinct thing from, and does not include the challenge, or right to challenge, recognized by the statute. The drawing of the jurors is one thing, the challenge of them another thing. The jurors are to be challenged as, or after, they are drawn. It is plain, too, that the challenge recognized by the statute is a challenge for cause, not a peremptory challenge. The jurors sworn are to be competent, and approved as indifferent.

By the act of April 27th, 1847 (130, ch. 134, § 1), it was enacted, that "upon the trials of any issue or issues of fact joined in a civil action, each party shall be entitled peremptorily to challenge two of the persons drawn as jurors for such trials."

Concede that this provision gave the right of peremptory challenge on trials by jury in justices' courts, yet this peremptory challenge was a distinct thing from the manner of drawing the jury, as I have before remarked in respect to the challenge for cause. The challenge, either peremptorily or for cause, was no part of the process or proceeding of drawing the jury, though it might be of impanelling the jury.

The provision, therefore, of the act of 1849, that "six of the persons so summoned shall be drawn in like manner as jurors in justices' courts," &c., did not give the right to the landlord to peremptorily challenge the juror in this case, or power to the magistrate to set the juror aside. If either the tenant or the landlord had a right to challenge any of the jurors drawn for cause, such right did not rest on the provision of the act of 1849 as to the manner of drawing the jury; but upon the provision of the act, that the persons nominated by the magistrate to be summoned as jurors shall be "qualified to serve as jurors in courts of record," and upon the ground that the grant of the right of trial by jury means, or implies, a competent and indifferent jury, and, therefore, carries with it the right of challenge for cause.

The right of peremptory challenge in this summary proceeding was not given directly by the act of 1847, for these statutory summary proceedings to get possession of land, in certain cases, are not civil actions. They are not actions at all. They are summary proceedings, to prevent the delay and expense of actions. Such a proceeding is not an action by the Code (*Code*, §§ 1–3): it was not an action before the Code. It can hardly

be said that the magistrate renders a judgment in the proceeding, even when he tries the matters controverted without a jury.

Every step of the proceeding is statutory and jurisdictional, and therefore the statute must be strictly pursued. (Farrington *a.* Morgan, 20 *Wend.*, 207.)

In this case, the relators objected to the allowance of the challenge without cause. The magistrate overruled the objection, and the juror was set aside. It is clear that the proceedings should be reversed, but I do not think that we should award restitution to the relators, under the facts and circumstances of the case. I think we should deem the lease under which the relators held to have expired, and leave them to their action under the statute for damages, if they have sustained any.